# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| LEONARD JENKINS, | ) CASE NO. 1:25-CV-00254-JRK |
| Petitioner, | ) JUDGE JAMES R. KNEPP II |
| | ) UNITED STATES DISTRICT JUDGE |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| ANNETTE CHAMBERS-SMITH | ) JENNIFER DOWDELL ARMSTRONG |
| Respondent. | ) **REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

Petitioner, Leonard Jenkins ("Mr. Jenkins"), filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 5). This matter was referred to me on April 14, 2025 under Local Rule 72.2 to prepare a report and recommendation on Mr. Jenkins' petition. (*See* ECF non-document entry dated April 1, 2025).

Currently before me is the motion of Respondent, Warden Malcolm Heard ("Warden"),[1] to transfer Mr. Jenkins' petition to the Sixth Circuit as a second or successive petition pursuant to 28 U.S.C. §§ 1631 and 2244(b)(3)(A), or, alternatively, to dismiss the petition as time-barred. (ECF No. 10). For the reasons set forth below, I recommend that the Court GRANT the Warden's motion and transfer Mr. Jenkins' petition to the Sixth Circuit.

---

[1] Mr. Jenkins named Annette Chambers-Smith, the Director of the Ohio Department of Rehabilitation and Corrections, as the respondent. Respondent notes that Mr. Jenkins is currently incarcerated at Franklin Medical Center, and that Warden Malcolm Heard is the warden of that institution, and thus the proper respondent in this proceeding. (ECF No. 10, PageID # 20, n.1); *see* https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A167706 (last accessed Nov. 24, 2025). I therefore recommend that the Court substitute Warden Heard for Director Chambers-Smith as the respondent.

1

## II. PROCEDURAL BACKGROUND

### A. State Court Conviction and Direct Appeal

On October 23, 1981, Mr. Jenkins was indicted in the Cuyahoga County Court of Common Pleas on one count of aggravated murder, eight counts of aggravated robbery, two counts of attempted murder, eight counts of kidnapping, one count of having weapons while under disability, and one count of possession of criminal tools. (ECF No. 10-1, Exhibit 1).

The case proceeded to trial. On March 26, 1982, the jury convicted Mr. Jenkins of one count of aggravated murder, eight counts of aggravated robbery, one count of attempted murder, five counts of kidnapping, and one count of possession of criminal tools. (ECF No. 10-1, Exhibit 12, PageID # 327-28). On April 12, 1982, the jury recommended that Mr. Jenkins be sentenced to death. (ECF No. 10-1, Exhibit 2). On April 16, 1982, the trial court imposed a death sentence with respect to the aggravated murder count. (ECF No. 10-1, Exhibit 12, PageID # 329). The court also sentenced Mr. Jenkins to an aggregate term of seven to twenty-five years on each of the aggravated robbery counts; seven to twenty-five years on the attempted murder count; five to fifteen years on each of the kidnapping counts; and two to five years on the possession of criminal tools count. *Id*. The trial court furthered ordered that Mr. Jenkins would serve his sentence on each count consecutively to his sentences on each other count. *Id*.

Mr. Jenkins, through counsel, timely appealed to the Ohio Court of Appeals for the Eighth Judicial District, raising 24 assignments of error. (ECF No. 10-1, Exhibit 3). On February 24, 1984, the Ohio Court of Appeals for the Eighth District reversed Mr. Jenkins' conviction for possession of criminal tools but affirmed the remaining convictions and corresponding sentences. *Id*. Mr. Jenkins appealed to the Ohio Supreme Court, which affirmed. (ECF No. 10-1, Exhibit 4). Mr. Jenkins filed a petition for a writ of certiorari in the United States Supreme Court, which denied the petition on June 24, 1985. (ECF No. 10-1, Exhibit 5).

### B. First Federal Habeas Petition

On December 9, 1985, Mr. Jenkins filed his first § 2254 habeas petition in this Court, in a case captioned *Jenkins v. Morris*, Case Number 1:85-cv-03707-GWW. (ECF No. 10-1, Exhibit 13). On August 4, 1995, the court dismissed Mr. Jenkins' petition with prejudice. *Id*. at PageID # 334. Upon my inquiry, the Clerk's Office advised that the only record in the Court's possession in this case is the docket. Specifically, the Clerk's Office advised that all documents from Mr. Jenkins' first federal habeas petition were transferred to the Archives in 2011 and subsequently destroyed.

### C. Petition for Postconviction Relief

On June 30, 1986, Mr. Jenkins filed a petition to vacate or set aside his judgment of conviction and sentence. (ECF No. 10-1, Exhibit 12, PageID # 330). On August 1, 1986, the trial court denied Mr. Jenkins' petition. *Id*. Mr. Jenkins appealed to the Eighth Appellate District, which affirmed on November 23, 1987. (ECF No. 10-1, Exhibit 7). Mr. Jenkins appealed to the Ohio Supreme Court, which dismissed the appeal *sua sponte*. (ECF No. 10-1, Exhibit 14, PageID # 335).

### D. Clemency

On January 11, 1991, then-Ohio Governor Richard Celeste commuted Mr. Jenkins' sentence to life without the possibility of parole. (ECF No. 10-1, Exhibit 8). The Director of the Ohio Department of Rehabilitation and Corrections and the Chief of the Ohio Adult Parole Authority filed a declaratory judgment action challenging the constitutionality of the Governor's action with respect to Mr. Jenkins and other inmates, and the trial court held that the commutations were void. (ECF No. 10-1, Exhibit 9, PageID # 249). On April 8, 1993, the Tenth Appellate District reversed, holding that Governor Celeste had the power under the Ohio Constitution to commute the sentence of Mr. Jenkins and other inmates. (ECF No. 10-1, Exhibit 9). On September 20, 1994, the Ohio Supreme Court affirmed in relevant part. (ECF No. 10-1, Exhibit 11).

E.  **Second Federal Habeas Petition**

On or about January 31, 2025, Mr. Jenkins, acting *pro se*, filed the present § 2254 habeas petition in the United States District Court for the Southern District of Ohio. (ECF No. 1-1). Mr. Jenkins asserts four grounds for relief:

1. Petitioner, Leonard Jenkins, went into the Courtroom 182 days fighting for his life after he was shot in the arm pit laying in the hospital on a Prescribed Medication that was mind altering and interfering with my mental condition, and my thinking ability to understand what was going on in the trial. With the bullet being in my right shoulder it caused me to have more pain where I could not function at all. This bullet caused me to become paralyzed from the waist down and damaging my spinal cord. Since than I have become a double amputee, both of my legs were cut off above the knees. During trial I was in a lot of pain. For forty three years I have been receiving inadequate medical care period when I took my medication it pretty much wiped me out, I had no energy, dizziness, I could not remember anything. Petitioner, Leonard Jenkins, reference in any even, the record showed that the Petitioner, Leonard Jenkins, had side effects from his injured neck from the gunshot wound that had increased pain in my neck. *Estelle v. Gamble*, 429 U.S. 97. Petitioner, Leonard Jenkins, wasn't disruptive while in a Courtroom, and he was urinating through his clothing on the way in the Courtroom and while sitting in the Courtroom parallel to my case. *United States v. Dial*, 694 F.2d app. 368. Was allowed to change his clothing when he urinated on himself in the Courtroom. Petitioner, Leonard Jenkins, was made to set in his own urine all through trial. My Plea wasn't knowingly and intelligently because of the prescribed medication that I was on which altered my thinking. A judge cannot take your plea if you are on a prescribed medication. The trial was a surreal.

   Petitioner, Leonard Jenkins, initially during my trial in April of 1982, in open court room of the Court of Common Pleas, Cuyahoga County, it was made known to the jury that I was intellectually disable, there was a Psychology Doctor who took this stand on my behalf explaining my situation far as my mentally retarded. My IQ score of roughly 63 approximately two standard deviation below the main score roughly 70 or lower when adjusted for the measurement. Its Cruel and Unusual Punishment to Execute a person that's intellectually Disable. Upon consideration three core elements: Intellectually Disable - Functioning Deficits. *State v. Ford* 158 Ohio St.3d 139.

   The sentence of death was inferential and contrary to law because I Petitioner, Leonard Jenkins, could not read or write, or understand any of the court proceedings. Outline The United States Supreme Court has held that imposing the death penalty on a Mentally Retarded person, criminals amounts to contrary to the law.

   The U.S. 11th Circuit Court of Appeals on Friday Ruled Alabama Cannot Execute A Death Row Prisoner Joseph Cliford Smith, Because of His Intellectual Disability This Decision Effective Smith's Death Sentence The U.S. District Court's Decision. Cannot Execute Joseph C. Smith Due To His Mental Disability. Cruel and Unusual

4

Punishment prohibited by U.S. Const. amend VIII. The Clinical term "Mentally Retardation" has since been changed to intellectual disable. When I was in Court I was just like a child far as my comprehension went and I was illiterate at this time period when I was going through school the whole time I was always in special Classes, because my mind did not function the way others function. When I graduated from high school, I was still in special classes so I have been dealing with this all of my life. Petitioner, Leonard Jenkins, was never disruptive while in the Courtroom and urinated through his clothing on the way into the Courtroom, while sitting in the Courtroom parallel to my case Plaintiff, Shaundelle Dial was allowed to change his clothing when he urinated on himself in the Courtroom. Petitioner, Mr. Jenkins was made to set in his own urine all through trial.

2. 2017 U.S. Lexis 217632. *Halstead v. Comm'r of soc.*,

   Twice I was on death row, Gov. Richard F. Celeste gave me a commutation in January of 1991, I transferred to Marion Correctional Institution. In Feb. of 1992, I was put back on death row. When the staff locked me up a psychologist came to see me, and asked me did I know why I was locked up and said no, she stated that I was locked up because I was put back on death row, Central Office sent her to make sure that I wasn't suicidal. I have been incarcerated for 43 years and I have never received the proper medical treatment, the medical treatment has been inadequate.

3. "Nonsecured status" means any unsupervised, off grounds movement or to trial visit from a hospital or institution, or any conditional release, that is granted to a person who is found incompetent to stand trial and is committed pursuant to section 2945.39 of the R.C. or to a person who is found not guilty by reason of insanity and is committed pursuant to section 2945.40 of the R.C. and ORC ANN 2945.37.

   Fundamental principles of due process require that a criminal defendant who is legally incompetent may not be tried. Where the issue of a defendant's competency in accordance with R.C. 2945.37 and *State v. Collins*, 2002-Ohio-1018.

   Regina A. Collins, appeal the Trial Court's Judgment finding Collins incompetent to Stand Trial and ordering her to undergo treatment at summit behavioral services. We Reverse the trial Court's Judgment because the Court clinic report on competency relied on by the Court was not properly admitted into evidence, and therefore, there was not sufficient evidence to overcome the presumption of competence.

   Requires a Court to conduct a hearing when the issue of the defendant's competency is raised before the trial-Court of Appeals Judgment Reversed, defendant's convictions Vacated, and cause remanded. Criminal Law R.C. 2945.37-2945-37(B). Procedural Due Process, Scope of Protection. It has long been recognized that a person who lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing for his defense may not be subjected to a trial.

   Fundamental principles of due process require that a criminal defendant who is legally incompetent may not be tried. Whether a defendant is competent depends on whether he has sufficient present ability to consult with his lawyers with a reasonable

5

degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him. Pretrial Motions & Procedures, Competency to Stand Trial.

A hearing under R.C. 2945.37(B) mandatory a trial Court must hold a competency hearing if a request is made before trial period if the issue of the defendant by a psychiatrist for a licensed clinical psychologist, who is required to file a report addressing certain specified topics with the Court under seal. R.C. 2945.37(A)(2); R.C. 2945.37(A)(H). *State v. Hough*, 169 Ohio St.3d 769 April 26, 2022 submitted, Dec. 13, 2022.

During my second death penalty trial Petitioner, Leonard Jenkins, was not present, in the absence of petitioner, Jenkins, during trial the court had no jurisdiction period we began with a simple general rule: a void judgment is one that has been imposed by a Court that lacks subject-matter jurisdiction over the case or lacks the authority to act. The majority expands the void sentence doctrine by declaring Petitioner, Leonard Jenkins, sentence void. Today's majority decision brings new life into claims that a technical mistake in a trial courts judgment injury makes a sentence void, and it is incongruent without precedent. And when we held that a court did act without jurisdiction, we unanimously held that the sentence imposed was void and that the Petitioner, Leonard Jenkins, is entitled to release in a federal habeas corpus proceeding. *In re Lockhart*, 157 Ohio St. 192, 193, 105 N.E.2d 35 (1952). Petitioner, Leonard Jenkins, serving a truly void sentence is entitled to be released through a Writ of Habeas Corpus. *State v. Williams*, 148 Ohio St. 3d 403. In the absence of a statutory remedy, those sentences are void.

4. A person who lacks the capacity to understand the nature and objective of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not stand trial period fundamental principles of due process require that a criminal defendant who is legally incompetent shall not be subjected to trial. *State v. Flanagan*, 2017-Ohio-955. Petitioner, Leonard Jenkins, comes before this honorable court asking that he be made Whole again.

*Id*.

On February 10, 2025, Magistrate Judge Peter B. Silvain, Jr. of the Southern District of Ohio transferred Mr. Jenkins' petition to this Court. (ECF No. 3).

On May 2, 2025, the Warden filed a motion to transfer Mr. Jenkins' petition to the Sixth Circuit as a second or successive petition pursuant to 28 U.S.C. §§ 1631 and 2244(b)(3)(A), or, alternatively, to dismiss Mr. Jenkins' petition as time-barred. (ECF No. 10). On May 30, 2025, Mr. Jenkins filed a motion requesting a 45-day extension of his deadline to respond to the Warden's motion. (ECF No. 11). I granted Mr. Jenkins' motion on the same day. (*See* ECF non-

6

document entry dated May 30, 2025).

Mr. Jenkins did not file a response by the extended deadline of July 14, 2025. On August 6, 2025, I entered an order advising him that, if he did not file a response on or before August 20, 2025, I would proceed to rule on the Warden's motion. (*See* ECF non-document entry dated August 6, 2025). On August 20, 2025, Mr. Jenkins filed a motion for an additional 60-day extension of his deadline to respond to the Warden's motion. (ECF No. 12). On the same day, I granted Mr. Jenkins motion and gave him until October 20, 2025 to file a response. (*See* ECF non-document entry dated August 20, 2025). I also warned him that I would not grant any further extensions of the deadline and that if he did not file a response by October 20, 2025, I would proceed to rule on the Warden's motion. *Id*. Mr. Jenkins did not file a response by October 20, 2025 and has not filed a response to date.

### III.    ANALYSIS

§ 2244(b)(2), as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides that a claim presented in a "second or successive" habeas petition that was not presented in a prior petition "shall be dismissed" unless: (1) the claim relies on a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court; or (2) the petitioner could not have discovered the factual predicate for the claim previously through the exercise of due diligence and the facts underlying the claim, if proven, would establish by clear and convincing evidence that no reasonable factfinder would have found the petitioner guilty absent the constitutional error. 28 U.S.C. § 2244(b)(2)(A)-(B).

§ 2244(b)(3) further provides that, before a petitioner may file a second or successive petition in the district court, he or she must file a motion in the court of appeals for that district for an order authorizing the district court to consider the petition. 28 U.S.C. § 2244(b)(3)(A). "When a petitioner ignores this provision and files a 'second or successive' application in the district court

without authorization, the district court lacks jurisdiction to hear the petitioner's claims." *Askew v. Bradshaw*, 636 F. App'x 342, 346 (6th Cir. 2016) (citing *Burton v. Stewart*, 549 U.S. 147, 149 (2007) (per curiam)). Accordingly, the Sixth Circuit has held that, "when a prisoner has sought § 2244(b)(3) permission from the district court, or when a second or successive petition for habeas corpus relief . . . is filed in the district court without § 2244(b)(3) authorization from this court, the district court shall transfer the document to this court pursuant to 28 U.S.C. § 1631." *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997).

This is Mr. Jenkins' second habeas petition, as he previously filed a habeas petition in 1985. That does not mean that the present petition necessarily is second or successive, however, as it is "well settled" that the phrase "second or successive" "does not simply 'refe[r] to all § 2254 applications filed second or successively in time[.]'" *Magwood v. Patterson*, 561 U.S. 320, 332 (2010) (quoting *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007)). Rather, "the Supreme Court has carved out three circumstances when a petition is second in time but isn't 'second or successive.'" *In re Hill*, 81 F.4th 560, 568 (6th Cir. 2023) (en banc). "First, when a second petition raises a claim that challenges a new state-court judgment—that is, not the one challenged in the first petition—the petition is not 'second or successive.'" *Id*. (citing *Magwood*, 561 U.S. at 339). "Second, a second petition containing a claim—whether presented or not in the first petition—that would have been unripe at the time of the filing of the first petition is not 'second or successive.'" *Id*. (citing *Panetti*, 551 U.S. at 943-45). "Third, when a second petition contains a claim that, though raised in the first petition, was unexhausted at that time and not decided on the merits, the petition is not 'second or successive.'" *Id*. at 568-69 (citing *Slack v. McDaniel*, 529 U.S. 473, 486-87 (2000)). "And when a 'numerically second petition' is not 'second or successive,' it isn't 'subject to the restrictions of 28 U.S.C. § 2244(b).'" *Id*. at 568 (quoting *In re Bowen*, 436 F.3d 699, 705-06 (6th Cir. 2006)).

8

In *Hill*, the Sixth Circuit set forth a series of steps that a court should follow to determine whether a petition is second or successive. First, a court should ask if "the second petition [is] challenging a new judgment or an old judgment[.]" *Hill*, 81 F.4th at 569. "If it's a new judgment, then the petition is not 'second or successive,' and [the court] turn[s] to the merits of the petition." *Id*. If the petition involves an old judgment, the courts asks whether "the claim presented is an old claim or a new claim[.]" *Id*. "If it's an old claim—that is, one that was presented in the first petition—then it's a 'second or successive' petition that must be dismissed under § 2244(b)(1)." *Id*. If the petition involves a new claim, the court asks whether the claim was "either unripe or ruled unexhausted at the time of the first habeas filing." *Id*. If the petition was not unripe or ruled unexhausted, "the petition is 'second or successive,' and the claim must meet the gatekeeping provisions under § 2244(b)(2)(B) to survive." *Id*.

Mr. Jenkins' petition is second or successive under that test. As an initial matter, he is challenging his original judgment of conviction, the same judgment at issue in his first habeas petition in 1985. That the Governor of Ohio commuted Mr. Jenkins' death sentence after he filed his first habeas petition does not change that fact, as a limited resentencing that benefits the petitioner does not constitute a new judgment. *See Crangle v. Kelly*, 838 F.3d 673, 678 (6th Cir. 2016); *Freeman v. Wainwright*, 959 F.3d 226, 230 (6th Cir. 2020) ("*Crangle* makes clear that limited resentencings that benefit the prisoner do not disturb the underlying judgment, which continues to constitute a final judgment.") (quotations omitted).

Here, the only effect of the Governor's commutation order was to convert Mr. Jenkins' death sentence into a sentence of life without the possibility of parole, an unquestioned benefit to Mr. Jenkins. Because the commutation order was, at most, a limited resentencing that benefitted Mr. Jenkins, it does not constitute a new judgment for federal habeas purposes. *See Freeman*, 959 F.3d at 230 (holding that *nunc pro tunc* order vacating original sentencing order and removing

9

post-release control provision did not constitute new judgment); *Peace v. LaRose*, No. 3:19CV1034, 2020 WL 822067, at *5 (N.D. Ohio Jan. 23, 2020) (same), *report and recommendation adopted*, 2020 WL 821492 (N.D. Ohio Feb. 18, 2020); *Smith v. May*, No. 4:20-CV-02387, 2022 WL 20403437, at *4 (N.D. Ohio Aug. 1, 2022) (holding that order reducing sentence from 80 years to 75 years did not constitute new judgment under *Crangle*), *report and recommendation adopted sub nom.*, 2023 WL 4706813 (N.D. Ohio July 24, 2023).

Turning to the remaining steps under *Hill*, it is unclear whether Mr. Jenkins' grounds for relief constitute old or new claims. The Warden did not include Mr. Jenkins' prior habeas petition in the record filed with the Court, and as discussed above those records are no longer available. However, even if Mr. Jenkins did not actually raise his present grounds for relief in his prior habeas application, his claims were ripe at the time of the first petition. Grounds One, Three, and Four are based on the events that occurred at trial, as Mr. Jenkins asserts that he did not comprehend the proceedings, was made to sit in his own urine, and was incompetent to stand trial. Because those claims challenge the events of the trial, they have "always been ripe." *Hill*, 81 F.4th at 572.

Mr. Jenkins' second ground for relief is more difficult to interpret. However, he appears to assert that he has not received adequate medical treatment while incarcerated. That is a not a proper basis for habeas relief. *See Caudill v. Hickey*, No. 12-7-KKC, 2012 WL 2524234, at *2 (E.D. Ky. June 29, 2012) (holding that claim challenging sufficiency of medical care "does not implicate the core concerns of habeas by challenging the fact of . . . confinement"); *Baxter v. Parris*, No. 1:13-cv-01306-JDB-egb, 2015 WL 7587367, at *6 (W.D. Tenn. Nov. 25, 2015) ("Petitioner's challenge to the conditions of his confinement is not a proper subject for a habeas petition.").

Regardless, Mr. Jenkins asserts that he has "never" received adequate medical treatment during his 43 years of confinement. (ECF No. 1-1, PageID # 17). Because the factual predicate of his claim—the alleged inadequate medical treatment—had already occurred before Mr. Jenkins

filed his initial habeas petition, his claim was ripe at the time of that petition. *See In re Tibbetts*, 869 F.3d 403, 406 (6th Cir. 2017) ("A claim is unripe when 'the events giving rise to the claim had not yet occurred.'") (quoting *In re Jones*, 652 F.3d 603, 605 (6th Cir. 2010)). Moreover, there is no indication that the district court previously dismissed any of Mr. Jenkins' claims as unexhausted. Nor has Mr. Jenkins—who did not file an opposition to the Warden's motion despite multiple extensions—argued otherwise. Accordingly, Mr. Jenkins' petition is a second or successive petition, and I recommend that the Court transfer the petition to the Sixth Circuit pursuant to 28 U.S.C. § 1631.[2]

## IV. RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court GRANT the Warden's motion and transfer Mr. Jenkins' petition to the Sixth Circuit pursuant to 28 U.S.C. §§ 1631 and 2244(b)(3)(A).

Dated: November 25, 2025

/s Jennifer Dowdell Armstrong
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.** Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being**

---

[2] Because I conclude that the petition is second or successive, I do not address the Warden's alternative argument that the Court should dismiss the petition on statute of limitations grounds.

> **served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).